354 So.2d 147 (1978)
Don D. CLAYTON and Adele McGrath, Appellants,
v.
CITY OF CAPE CANAVERAL, Florida, and Willard Winnett, Appellees.
No. 76-641.
District Court of Appeal of Florida, Fourth District.
January 31, 1978.
Rehearing Denied March 16, 1978.
*148 Kenneth A. Studstill of Studstill & Kutsche, P.A., Titusville, for appellants.
James Theriac, III and Richard F. Scott of Wolfe, Kirschenbaum, Caruso & Mosley, P.A., Cocoa Beach, for appellees.

ON REHEARING
ANSTEAD, Judge.
In our opinion of August 23, 1977, we held that the appellee, City of Cape Canaveral, a municipal corporation, was immune from liability for a malicious prosecution action brought by the appellant, Don D. Clayton. That opinion is hereby withdrawn.
The appellants, Don D. Clayton and Adele McGrath, filed an action for malicious prosecution and other related causes of action against the appellees, City of Cape Canaveral and its chief of police, Willard Winnett, resulting from a series of arrests and prosecutions of Clayton and McGrath in 1965. Those prosecutions were finally terminated in favor of the appellants by a circuit court judgment of August 6, 1969. At the trial of this case a directed verdict was granted in favor of the appellees on all counts. On review, we find adequate grounds exist to affirm the judgment entered on the directed verdict in favor of appellees except for the malicious prosecution action of Clayton against the City of Cape Canaveral.
Clayton owned property which was rented to McGrath who in turn operated a "bottle club" business thereon. The "bottle club" permitted the consumption of alcoholic beverages after the operating hours of bars and cocktail lounges. City officials opposed the operation of the club and caused Clayton and McGrath to be arrested numerous times for the alleged violation of a city zoning ordinance. There was evidence that the zoning ordinance in question did not apply to the Clayton property and that the city officials knew this before having Clayton and McGrath repeatedly arrested and charged. Eventually, Clayton and McGrath secured a circuit court judgment enjoining the city from prosecuting them under the ordinance. That judgment held in part:
... The City of Cape Canaveral, Florida, its officials, agents and servants have harassed the petitioner herein by arresting the petitioner numerous times for a violation of ordinance number 81-64 aforesaid at 118 Jackson Avenue in the said city of Cape Canaveral, Florida...
Winnett was not the chief of police at the time of the arrests. We believe the evidence outlined above was sufficient to establish a prima facie case of malicious prosecution against the municipality precluding a directed verdict. However, the appellee claims that at the time of the acts involved herein it was immune from an action for malicious prosecution.
In support of its position the municipality relies on Calbeck v. Town of South Pasadena, 128 So.2d 138 (Fla. 2d DCA 1961) and Middleton v. City of Fort Walton Beach, 113 So.2d 431 (Fla. 1st DCA 1959) which held that municipalities were immune *149 from liability for malicious prosecution. However, the Florida Supreme Court has subsequently ruled that the holdings in those cases were contrary to the Supreme Court's ruling in Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957). In City of Miami v. Simpson, 172 So.2d 435 (Fla. 1965) the Supreme Court rejected the Calbeck and Middleton decisions noting that neither had been brought to the Supreme Court for review. In Simpson, the Supreme Court clarified the holding in Hargrove and at pages 436 and 437 stated:
[I]t [Hargrove] was a definitive re-evaluation of the precedents on the subject of municipal immunity from tort liability. The nature of the wrong was not our primary concern. Rather, the thrust of the challenge was to eliminate the illogical and sometimes nebulous distinctions between so-called governmental and proprietary functions in solving problems in municipal tort liability. We disposed of the problem there by substantially eliminating the governmental-proprietary dichotomy and by leveling liability on the doctrine of respondeat superior. True, Hargrove did not involve an intentional wrong. However, it constructed municipal liability on the broad foundation of respondeat superior. With the governmental-proprietary distinction eliminated  preserving immunity only in the exercise of legislative, quasi-legislative, judicial and quasi-judicial functions  we see no reason to restrict the respondeat superior concept to negligent torts. We, therefore, hold that the District Court properly applied the Hargrove concept in sustaining municipal liability for intentional torts committed by employees acting within the scope of their employment.
Calbeck and Middleton erroneously interpreted Hargrove as extending municipal tort liability to negligent torts alone. The Supreme Court in Simpson made it clear that liability was being extended to both negligent and intentional torts, under the doctrine of respondeat superior.
The Calbeck and Middleton opinions also relied on an express exception contained in the Hargrove opinion which preserved municipal immunity in cases similar to Elrod v. City of Daytona Beach, 132 Fla. 24, 180 So. 378 (1938). In Elrod a municipality was held immune from liability for the attempted enforcement of an unconstitutional ordinance. However, the basis for immunity appears to be the fact that the passage of the ordinance was a legislative function. Although the Calbeck opinion construed the Elrod decision to hold that enforcement of an ordinance was a quasi-judicial function, that conclusion was effectively overruled by Simpson and is directly contrary to the Supreme Court's holding in Modlin v. City of Miami Beach, 201 So.2d 70, 73 (Fla. 1967):
However, since enforcement is typically the task of the executive, it can hardly be viewed as falling within the area of municipal tort immunity reserved by the Hargrove caveat, i.e., judicial, quasi-judicial, legislative, and quasi-legislative functions.
We feel the Supreme Court, in excepting the Elrod decision from the Hargrove ruling, was merely retaining immunity for municipalities in suits predicated on the passage and enforcement of unconstitutional ordinances. Such is not the case at hand.
This court outlined the current status[1] of municipal tort liability in the case of Gordon v. City of West Palm Beach, 321 So.2d 78 (Fla. 4th DCA 1975); cert. denied 349 So.2d 160 (Fla. 1977):
Thus we conclude that the current status of municipal tort liability is this:
1) as to those municipal activities which fall in the category of proprietary functions a municipality has the same tort liability as a private corporation;
2) as to those activities which fall in the category of governmental functions "... a municipality is liable in tort, under the doctrine of respondent superior, only when such tort is committed against one with whom the agent or employee is in privity, or with whom he is *150 dealing or is otherwise in contact in a direct transaction or confrontation." City of Tampa v. Davis, Fla.App. 1969, 226 So.2d 450;
3) as to those activities which fall in the category of judicial, quasi judicial, legislative, and quasi legislative functions, a municipality remains immune. Hargrove v. Town of Cocoa Beach, supra; Modlin v. City of Miami Beach, supra.
The appellee municipality contends that the actions of the municipality complained of here are quasi-judicial in character and fall in category 3 of the Gordon decision. That position is directly contrary to the decision in Modlin, supra.
The acts complained of here occurred in the performance of a governmental function and were committed against one with whom the municipal officials had direct contact. Looking at the categories set out in Gordon, supra, it would appear that this case falls under category 2. In Hargrove and Simpson municipalities were made liable for intentional torts under the doctrine of respondeat superior. Malicious prosecution is an intentional tort for which a municipality may be liable. Since there may be municipal liability for malicious prosecution and there was sufficient evidence presented by the appellant Clayton to establish a prima facie case, we hereby reverse the judgment in favor of the municipality against Clayton on the malicious prosecution action for a new trial. In all other respects the judgment of the trial court is affirmed.
We would be remiss if we did not comment in this opinion on the importance to the appellate process of the roles of the lawyers in accurately and completely briefing the issues involved. The original opinion in this case was largely predicated on two decisions cited to the court by one of the parties. Not cited to the court was a later decision which in effect overruled the two cases relied on. This court must shoulder the ultimate responsibility for not discovering the later case. However, in our adversary system great reliance is placed on the responsibility of counsel to be certain that cases cited have not been overruled. The importance of this principle is recognized in Canon 7 of the Code of Professional Responsibility which states:
EC 7-23. The complexity of law often makes it difficult for a tribunal to be fully informed unless the pertinent law is presented by the lawyers in the cause. A tribunal that is fully informed on the applicable law is better able to make a fair and accurate determination of the matter before it. The adversary system contemplates that each lawyer will present and argue the existing law in the light most favorable to his client. Where a lawyer knows of legal authority in the controlling jurisdiction directly adverse to the position of his client, he should inform the tribunal of its existence unless his adversary has done so; but, having made such disclosure, he may challenge its soundness in whole or in part.
While we recognize that lawyers, as judges, may have heavy workloads, we must all be mindful that not only the parties but the public at large is greatly affected by appellate decisions.
AFFIRMED IN PART AND REVERSED IN PART WITH DIRECTIONS FOR A NEW TRIAL.
DOWNEY, J., and FOGLE, HARRY W., Associate Judge, concur.
NOTES
[1] The present case arose prior to the enactment of Section 768.28, Florida Statutes, concerning the waiver of sovereign immunity in tort cases.