474 So.2d 820 (1985)
CITY OF COCONUT CREEK, a Municipal Corporation, Appellant,
v.
Danny C. FOWLER, Appellee.
No. 84-195.
District Court of Appeal of Florida, Fourth District.
April 24, 1985.
Rehearing and Rehearing Denied September 18, 1985.
*821 Melanie G. May and James B. Denman of Bunnell, Denman & Woulfe, P.A., Fort Lauderdale, for appellant.
Michael S. Gellert, Margate, for appellee.
Rehearing and Rehearing En Banc Denied September 18, 1985.
PER CURIAM.
This is an appeal from a verdict and judgment adverse to the City in a malicious prosecution action. In 1981 Danny Fowler was a construction job site supervisor for a corporation named Raben-Pastal on a project in Coconut Creek. A dispute arose between the developer and certain building officials, employees of the City of Coconut Creek. The developer claimed that Ronald Thomas, a building inspector, had been relentlessly harassing both Fowler and the developer of the project.
It became necessary to do a "load test" on the building. James Cowley, the chief municipal building official, retained the engineering firm of D.E. Britt and Associates to conduct inspections on behalf of the City. This firm had expertise in the area of post tension construction. This expertise was required for the load test but not found in the City's engineering staff.
Fowler presented evidence that the developer and the City entered into an agreement which provided that Mr. Thomas would not visit the job site during the load test. The City, on the other hand, denied the existence of this agreement. The verdict on the malicious prosecution claim indicates the jury believed Fowler in this regard.
During the load test on May 21, 1981, Thomas showed up and demanded access for inspection purposes. Fowler, relying on the agreement, refused. An argument developed and Fowler called the developer who in turn contacted the police in order to have Thomas removed. When the police arrived, however, they arrested Fowler. Fowler was given a notice to appear and released.
The City prosecuted Fowler for violation of Section 201.8 of the South Florida Building Code, which requires developers to admit building inspectors upon presentation of adequate credentials. Fowler was acquitted.
Fowler then brought an action for malicious prosecution and false arrest against Thomas, Cowley, and the City of Coconut Creek. The trial court directed a verdict in favor of Thomas and Cowley, but not in favor of the City. The jury returned a verdict against the City for malicious prosecution, and awarded damages in the amount of Seventy-Five Thousand Dollars. The jury returned a verdict in favor of the City on the false arrest claim.
When the jury calculated damages, however, they apparently considered the injury, both physical and emotional, which Fowler suffered as a result of the false arrest. Fowler testified at great length concerning the shame, humiliation, and other consequences of the arrest. On the other hand, there was virtually no evidence presented to the jury that indicated that Fowler was in any way damaged by the prosecution. The arrest constituted the sole focus of all Fowler's claims of injury. Since he lost on the false arrest claim, the harm he allegedly suffered as a result of the arrest cannot be considered under the malicious prosecution claim.
There was no factual basis for the jury's award of Seventy-Five Thousand Dollars in damages, therefore, this case must be reversed on the authority of City of Miami v. Graham, 311 So.2d 697, 698 (Fla. 3d DCA 1975), cert. denied, 330 So.2d 17 (Fla. 1976).
*822 This case must also be reversed under the authority of Section 768.28(9), Florida Statutes (1979). A 1980 amendment to the statute added the present language which explicitly stated: "The state or its subdivisions shall not be liable in tort for the acts or omissions of an ... employee ... committed ... with malicious purpose... ." The statute now affirmatively disallows suits against municipalities for the malicious acts of their employees.
For the reasons stated herein, the decision of the trial court is reversed and the cause is remanded for further proceedings not inconsistent herewith.
ANSTEAD, C.J., and WALDEN, J., concur.
CARLISLE, JAMES T., Associate Judge, concurs specially with opinion.
CARLISLE, JAMES T., Associate Judge, concurring specially:
I agree this case must be reversed because the record does not reflect any evidence that Fowler suffered as a result of the prosecution as opposed to the arrest. I disagree that Section 768.28(9)(a), Florida Statutes, bars recovery because I think that portion of it which immunizes the City from the malicious acts of its employees is unconstitutional.
The argument was made in this case that once the directed verdict was entered in favor of Thomas and Cowley on the malicious prosecution claim, no verdicts could be entered against the City. The argument has a certain syllogistic appeal. Corporations, including municipal corporations, are legal fictions. As such, they cannot act in themselves but may do so only through their agents or employees. Therefore, to bring an action against a municipality a plaintiff must show some act or omission on the part of the municipal employee. When people conspire together to do malicious acts, however, they usually do so in secret. Therefore, it is possible to prove a malicious act by a corporation acting through unknown officers or employees.
The fact of the matter is corporations, including municipal corporations, can act meanly and maliciously. They can be small and petty and avaricious. It is also true the acts of corporations, including municipal corporations, often transcend the acts of individual employees. It is possible for corporations to carry out malicious designs whereby individual tasks performed by employees are so attenuated from each other that the employees go about their tasks unaware of any wrongdoing. It is possible for corporations, including municipal corporations, to act in such a way that it is difficult if not impossible to unfold the shrouds of corporate bureaucracy and lay hands on the author of a malicious enterprise. It is often difficult for the trier of fact to find the employees with whom a plaintiff came into direct contact of doing anything more than "following orders." I believe there may well be cases in which it is possible to find that the city acted maliciously wholly independent of the actions of the municipal employee. That is not the case here, however.
If we adopt appellant's argument we must concede a Catch-22 situation arises when someone sues a municipality for a tort which involves malice, such as malicious prosecution. First, the plaintiff must prove that the often inpecunious municipal employees acted maliciously. If he fails in this, his action against the municipality must also fail because liability is founded upon the doctrine of respondeat superior. If he is able to prove malice on the part of the employee, Section 768.28(9), Florida Statutes, kicks in and the city is immune.
The doctrine of municipal immunity had its origin in the case of Russel v. Men of Devon, 2 T.R. 667, 100 Eng.Rep. 359 (1788). The Men of Devon case was decided twelve years after Florida's adoption of the Common Law as it existed on July 4, 1776, Section 2.01, Florida Statutes. Thus, it has never been the common law of Florida. In holding the courts of Florida not bound by the Men of Devon decision, the Florida Supreme Court, in Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957), stated:

*823 The Men of Devon decision merely relieved the inhabitants of an unincorporated county from liability for damages resulting from a defective bridge. Aside from the fact that the case involved a county rather than a city, it is interesting to note that we ourselves have refused to follow this historic precedent so far as cities are concerned in the numerous cases in which we have held municipalities liable for negligence in the maintenance of streets and bridges. As early as 1850 in City of Tallahassee v. Fortune, 3 Fla. 19, the Men of Devon decision was very clearly explained and distinguished. Our Court then pointed out that the leading English precedent turned on the proposition that it was an action against all of the people of an unincorporated community having no corporate fund or legal means of obtaining one. The law would not impose the burden on each individual citizen.
See also: Borchard, Government Liability in Tort, 24 Yale L.J. 1, at 41, 42. It is also interesting to note that by the turn of the century, England had overruled the Men of Devon decision and municipal immunity for tort is not recognized in England at this time. Jackson v. Florence, 294 Ala. 592, 320 So.2d 68 (Ala. 1975). See annotation 160 A.L.R. 7.
The notation that municipalities cannot be held liable for tortious acts crept into our law on a misconception. This idea was, of course, against the grain of the tort concept that liability follows injury and the constitutional guarantee that persons are entitled to a legal remedy for injuries they receive in their person or property.
As a result, the trend of judicial decisions was always to restrict, rather than to expand, the doctrine of municipal immunity. To mitigate the harshness produced by the doctrine of sovereign immunity the judiciary engrafted exceptions on the rule of municipal immunity from tort claims. By assigning a dual character to municipal corporations the courts early held that only insofar as municipalities exercised a governmental function would they be immune from liability for their torts, but when acting in a corporate or proprietary capacity their liability for torts would be tested under the same principles applied to private persons or corporations. Further, the immunization of municipalities from tort liability was early chipped away by the enactment of statutes waiving, in effect, substantive immunity in certain areas, such as defective or dangerous streets, alleys or other public thoroughfares; or municipal property; the operation of motor vehicles, or for negligence of officers or employees. In addition, municipalities have been held responsible for nuisance, whether acting in a governmental or proprietary capacity.
Despite the judiciary's attempt to ameliorate the strict rule of municipal-tort immunity by means of the "governmental-proprietary" distinction, criticism of the rule continued unabated. As noted by the Wisconsin Supreme Court, "There are probably few tenets of American jurisprudence which have been so unanimously berated as the governmental immunity doctrine. This court and the highest courts of numerous other states have been unusually articulate in castigating the existing rule; text writers and law reviews have joined the chorus of denunciators." [Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618 (1962)].
Although seriously questioned and condemned by eminent jurists and distinguished legal authors, on the ground, among those already mentioned, that it places on the individual damaged an inequitable burden which should be borne by the community at large, for many years most of the courts adhered to the rule of municipal governmental immunity out of sheer weight of judicial authority, often reluctantly. As declared the supreme court of Kentucky: "This court in late years has accepted the theory with reluctance and has seized upon almost any excuse, however flimsy, to grant relief to any person harmed by negligence of a *824 municipal corporation." [Haney v. City of Lexington, 386 S.W.2d 738 (Ky. 1964)].
The "governmental-proprietary" test for determination of municipal-tort liability resulted in inconsistent and highly artificial judicial distinctions in its application to municipal activities. The inequities and incongruities resulting from attempts to fit particular conduct into one or the other of these two categories made the doctrine unsound and unworkable. An activity deemed governmental in one jurisdiction has been held to be proprietary in another. The United States Supreme Court, in referring to the "non-governmental-governmental" quagmire that has long plagued the law of municipal corporations, stated that "A comparative study of the cases in the forty-eight States will disclose an irreconcilable conflict. More than that, the decisions in each of the States are disharmonious and disclose the inevitable chaos when courts try to apply a rule of law that is inherently unsound. The fact of the matter is that the theory whereby municipalities are made amenable to liability is an endeavor, however awkward and contradictory, to escape from the basic historical doctrine of sovereign immunity." [Indian Towing Company v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955).]
(Some citations omitted.)
In Hargrove, supra, Justice Thornal noted: "the effort to prune and pare the rule of immunity rather than uproot it bodily and lay it aside as we should any other archaic and outmoded concept" produced strange and incongruous results.[1] Among the absurdities noted by Justice Thornal: a municipality was liable to a prisoner who contracted a communicable disease while in the city jail, Lewis v. City of Miami, 173 So. 150 (1937); but where a police officer assaults and injures a prisoner the municipality was immune, Kennedy v. City of Daytona Beach, 132 Fla. 675, 182 So. 228 (1938); where a police officer, while driving his automobile negligently, injures a person, the municipality is liable, City of Avon Park v. Giddens, 158 Fla. 130, 27 So.2d 825 (1946); but when a police officer gets out of his automobile and wrongfully assaults a citizen, the municipality is immune from responsibility, City of Miami v. Bethel, 65 So.2d 34 (Fla. 1953) (en banc). The Supreme Court went on to hold individuals are entitled to redress for wrongs done through the negligence of municipal employees while acting in the scope of their employment.
In City of Miami v. Simpson, 172 So.2d 435 (Fla. 1965), the court held a municipality is liable for intentional torts committed by employees when acting within the scope of their employment. In Clayton v. City of Cape Canaveral, 354 So.2d 147 (Fla. 4th DCA 1978), the Fourth District Court of Appeal held "malicious prosecution is an intentional tort for which a municipality may be liable." Id. at 150. In malicious prosecution suits "malice" requires animosity and the desire to do harm for harm's sake, Erp v. Carroll, 438 So.2d 31 (Fla. 5th DCA 1983). How, or whether, this differs from the kind of ill will involved in a punch in the nose or Kennedy, supra, or Bethel, supra, I am not prepared to say.
In 1980, Section 768.28(9)(a), Florida Statutes, was amended to provide:
[T]he state or its subdivisions shall not be liable in tort for the actions or omissions of an officer, employee, or agent ... committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
Prior to the 1980 amendment municipalities were liable in negligence, Hargrove, supra, for intentional torts, Simpson, supra, and for malicious prosecution, Clayton, supra. The 1980 amendment restored municipal immunity for malicious prosecution.
Article 1, Section 21, of the Constitution of the State of Florida, provides:

*825 The courts shall be open to every person for redress of any injury and justice shall be administered without sale, denial or delay.
In Kluger v. White, 281 So.2d 1 (Fla. 1973), the Supreme Court held:
Where the right of access to the courts for redress of a particular injury has been provided by statutory law predating the adoption of the declaration of rights of the Constitution of the State of Florida, or where such a right has become a part of the common law of the state, pursuant to Florida statute Section 2.01 F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the state to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such rights and no alternative method of meeting such public necessity can be shown.
The 1980 amendment abolished a cause of action for malicious prosecution by a municipality through its agents. The tort of malicious prosecution existed at common law.[2]
The Legislature has not shown any overpowering necessity as was the case in Rotwein v. Gersten, 160 Fla. 736, 36 So.2d 419, 421 (1948), wherein a Florida Statute abolishing causes of action for alienation of affection was "prefaced by a declaration of policy, in which it was stated that such actions had been subject to grave abuses, causing extreme annoyance, embarrassment, humiliation and pecuniary damages to many persons wholly innocent and free from wrongdoing... ." Id., 36 So.2d at 420. Nor has a reasonable alternative been advanced by the Legislature to protect the rights of people of the State to redress for injuries. It is true the victims of malicious prosecution are free to sue the individual municipal employee involved. But that right has always been available. The right to sue the municipality, as recognized in Clayton, supra, has been unconstitutionally destroyed.
For these reasons I must disagree with my brothers of the majority.
NOTES
[1] The Supreme Court of Florida was the first court to recede from the doctrine. It is now the overwhelming weight of authority that governmental immunity has been abrogated at least to some extent. McQuillan Municipal Corporations, Section 53.02.
[2] "The law of malicious prosecution ... is very ancient. `From the very twilight of the English law,' says Professor Bigelow, `it has been unlawful for men to harass each other with vexatious suits.'" Street, 1 Foundations of Legal Liability, page 328.

"A third way of destroying a man's reputation is by preferring malicious indictments or prosecutions against him, which under the mask of justice and public spirit, are sometimes made the engines of private spite and emnity." Blackstone's Commentaries, Tucker edition, Vol. IV, Book III, Chapter 8.
"A man may recover damages against another for maliciously and without probable cause instituting a criminal, or in some cases, a civil prosecution against him upon a false charge." Holmes, The Common Law, Lecture IV, page 140.
Tatum Brothers Real Estate & Investment Co. v. Watson, 92 Fla. 278, 109 So. 623 at 626 describes malicious prosecution as "a very ancient remedy."