PER CURIAM.
Burton S. Wolcoff appeals the judgment, finding him guilty of two counts of first-degree murder and sentence of concurrent terms of life imprisonment with a minimum mandatory of twenty-five years. We affirm.
Appellant claims Michael Wolcoff, his son, never testified adversely, such as to open the door for the state to impeach its own witness. The state responds that the son was a court witness, not the state’s at the time of impeachment; second, that even if the son was the state’s witness, his testimony was adverse; and that the court’s instruction as to this evidence cured any harm. The second reason disposes of the issue, in our view.
The state correctly points out that the son’s retraction of his statement was adverse, so as to allow impeachment. In general, a witness may not be impeached by the party who called him. § 90.608(1), Fla.Stat. (1987). However, if a party calls a witness who proves “adverse” under section 90.608(2), Florida Statutes (1987), the party calling the witness may impeach him by prior inconsistent statements or by direct evidence. Before a witness can be declared adverse under section 90.608(2), the witness must give testimony that is adverse, unfavorable, or prejudicial to the calling party. Erp v. Carroll, 438 So.2d 31 (Fla. 5th DCA 1983).
*727 Michael Wolcoff s testimony at trial was prejudicial to the state’s case. It intended to call him as an eyewitness because he previously stated he was present when his father and others planned the murders, and exchanged money for the killings. At trial he testified:
BY MR. MORTON:
Q. Now, you are saying that your father never had or made any plans with Bernie Rubin and Stanley Diamond to kill the Nipons? Is that what you’re telling us today?
A. Correct.
Q. And you know this for a fact?
A. The best of my knowledge.
The trial court ruled him adverse, and the following colloquy, conducted by the prosecutor ensued:
BY MR. MORTON:
Q. Mr. Wolcoff, in your second statement to the police, do you remember being asked this question: Were you present—
MR. HARRIS: What page are we on?
MR. MORTON: I’m sorry. Page 3, counsel. Near the top.
BY MR. MORTON:
Q. And your answer: I was present at one of the meetings.
Question: Who was — you were present at one of the meetings?
And your answer: Yes, which is at Bernie’s house and Bernie and Mark were there, and from which I found out, my father was the one or Burton Wolcoff was the one who paid the money which was $100,000 to Mark to do the hit.
Do you remember making that statement?
A. Yes.
Michael Wolcoff was seen approaching and leaving the crime around the time of its occurrence. The state’s evidence indicated he played a vital role in the crime though he was acquitted, which acquittal was rebuttal evidence herein. Accordingly, his categorical denial of his father’s involvement clearly was adverse.
LETTS and GLICKSTEIN, JJ., concur.
GARRETT, J., dissents with opinion.